IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLA STANGE and EDWARD
VON STANGE,

        Plaintiffs,

vs.

ROBYN BURGE, in her individual
capacity, JASON SANCHEZ, in his
individual capacity, NICK WILSON,
in his individual capacity, JOHNNY
YARA, in his individual capacity,
TERRY STEPHENSON, in his
individual capacity, JOHN DOES and
JANE DOES (Albuquerque Police
Department), in their individual
capacities, and JOHN DOES and
JANE DOES (Metropolitan Detention
Center), in their individual capacities,

        Defendants.

No.  1:12-cv-00211-PJK-LFG

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of the City Defendants' Motion
for Summary Judgment Requesting Dismissal of Plaintiffs' Amended Complaint
on Qualified Immunity Grounds filed February 28, 2013.  Doc. 78.  Upon
consideration thereof, the City Defendants' motion seeking qualified immunity on
Counts I and II of the first amended complaint is well taken and should be

granted.

Background

On March 5, 2009, Plaintiffs Charla Stange and her son Charles Von Stange were arrested on suspicion of buying and selling stolen goods at a store known as Krazy Kat Records.  Doc. 25 ¶¶ 9–14; Doc. 78 at 1–5, ¶¶ 2–4, 18–19.  At the time of the arrests, Plaintiff Charla Stange suffered from chronic obstructive pulmonary disease and required supplemental oxygen via a nasal canula.  Doc. 25 ¶ 16.  Plaintiffs allege that they advised the Albuquerque police officers of her condition and need for continuous use of an oxygen tank.  Doc. 25 ¶¶ 18–19. They assert that Plaintiff Charla Stange nevertheless was deprived of additional oxygen for several hours during her detention, causing her to suffer oxygen deprivation and requiring medical attention.  Doc. 25 ¶¶ 27–34.  Plaintiffs further allege that Plaintiff Charles Von Stange was handcuffed for an excessively long time period, causing numbness in his hands for months.  Doc. 25 ¶¶ 43, 45, 47–56.

Discussion

A.   Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(a) "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  In applying this standard, the court reviews the evidence in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  At the same time, Plaintiffs must go beyond the allegations in the complaint and come forward with significantly probative evidence that would support a verdict in their favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).

A party seeking summary judgment must inform the court of the basis for its motion and identify those portions of the record that demonstrate the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party seeking summary judgment is not required to negate his opponent's claim; he may challenge the non-movant's ability to prove his claim based upon the record, and at that point, the non-movant must go beyond the pleadings and demonstrate a genuine issue for trial.  Id. at 322–24.  As with any motion, a non-movant who does not respond to a movant's grounds for summary judgment does so at his peril and cannot complain when the district court issues an unfavorable ruling.  See United States v. Nacchio, 555 F.3d 1234, 1246–47 (10th Cir. 2009) (en banc).

B.    Qualified Immunity

Government officials performing discretionary functions are entitled to qualified immunity when their conduct does not violate clearly established rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S.

223, 231–32 (2009). The Supreme Court has emphasized that qualified immunity should be decided early in the proceedings because it is immunity from suit (rather than a defense to liability) that is effectively lost if Defendants are required to go to trial. Id. Qualified immunity is a legal inquiry, but it may be applied to government officials' mistakes of law, mistakes of fact, or mistakes involving mixed questions of law and fact. Id.

Given a qualified immunity defense raised on summary judgment, a plaintiff must demonstrate how the facts (taken in the light most favorable to the plaintiff) make out a constitutional violation, and if so, whether the right is clearly established given these specific circumstances. Id. at 232; Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc). The court may decide these issues in any order. Pearson, 555 U.S. at 236. In this circuit, qualified immunity issues are almost always questions of law, decided by a court prior to trial. Keylon v. City of Albuquerque, 535 F.3d 1210, 1217 (10th Cir. 2008).

C.    Plaintiffs' Claims

In Count I, Plaintiffs contend that Defendants, including City Defendants Jason Sanchez and Johnny Yara, deprived Plaintiff Charla Stange access to oxygen, thereby using excessive force in the execution of her arrest. Doc. 25 ¶ 71. In Count II, Plaintiffs contend that Defendants, including City Defendants Nick Wilson and Terry Stephenson, kept Plaintiff Edward Von Stange in

handcuffs for several hours, thereby using excessive force in the execution of his arrest.  Doc. 25 ¶ 77.  In Count III, Plaintiffs contend that Defendants, including City Defendants Jason Sanchez and Nick Wilson, as well as Defendant Robbin Burge, participated in an unlawful search and seizure at the business premises. Doc. 25 ¶¶ 59, 60, 65.  Counsel for City Defendants inform the court that Plaintiffs have agreed to a stipulated dismissal of Count III, and a dismissal of Defendant Jason Sanchez as a party.  Doc. 78 at 1.

The court previously ruled that the excessive force claims of the Plaintiffs arise under the Fourth, not the Fourteenth, Amendment.  Doc. 47.  It now appears that the gravamen of Plaintiff Charla Stange's claim is denial of adequate medical care, i.e. failure to provide oxygen.  Under the Fourteenth Amendment's due process clause, pretrial detainees are protected against denial of adequate medical care (just as those convicted are so protected under the Eighth Amendment). Barrie v. Grand Cnty., 119 F.3d 862, 867 (10th Cir. 1997); Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992) (per curium).  At a minimum, Plaintiff Charla Stange was required to show a substantial risk of serious harm and that the City Defendant Johnny Yara acted with deliberate indifference to that harm. Farmer v. Brennan, 511 U.S. 825, 837–38, 844 (1994); Estelle v. Gamble, 429 U.S. 97, 104–06 (1976).

D.    Application

The operative summary judgment facts establish that on March 5, 2009, in

connection an investigation of buying and selling stolen goods, Detective Robbin Burge left the store premises to obtain a warrant while City Defendants Wilson and Yara went inside the store to secure it.  Doc. 78 at 5, ¶ 15.  Plaintiff Edward von Stange was handcuffed.  Id. at 5, ¶ 19; Doc. 78-5 at 1.  Defendant Yara asked Plaintiff Charla Stange about her oxygen needs and she indicated that she did not need any at the time, having changed the tank prior to transport to the police substation. Doc. 78 at 5, ¶ 17; at 7, ¶ 28.  Upon contacting the MDC, Defendant Yara was told by jail personnel that the MDC could provide oxygen.  Doc. 78 at 5, ¶ 17.  Plaintiff Edward von Stange testified that he was handcuffed with his arms behind his back, the handcuffs were tight, and became tighter when he leaned against a box.  Id. at 6, ¶ 20–21.  However, he did not complain about the discomfort while inside the store.  Id. at 6, ¶ 22.

Plaintiffs were taken to a police substation, from there to a prisoner transport center, and ultimately to the MDC.  In the process, Plaintiff Edward von Stange complained that his handcuffs were on too tight, and Defendant Stephenson adjusted them.  Id. at 8, ¶ 38.  Plaintiff Charla Stange told Defendant Stephenson that she was going to run out of oxygen, and did run out of oxygen and was told by Defendant Stephenson that she would receive oxygen at the next location.  Id. at 8, ¶ 39.  Once at the MDC, Plaintiff Charla Stange was informed that the MDC did not have oxygen, and a medic called for paramedics.  Id. at 9, ¶ 43.  A paramedic reported that Plaintiff Charla Stange was not acutely short of

breath or in acute distress, and he made no notation that she was supplied with oxygen. Id. at 9, ¶¶ 45–46; see also Doc. 78-11. The fact that the paramedic had no independent recollection of the call and refreshed his recollection from his report does not, without more, create a genuine issue of material fact. See Doc. 85 at 5, ¶ 45; Doc. 89 at 4, ¶ 45.

Plaintiffs suggest several additional facts. Doc. 85 at 2–5. Plaintiff Charla Stange maintains that she told Defendant Yara at the store that her oxygen tanks last only for one-and-a-half to two hours, and that she was twice denied permission to take another tank. Doc. 85 at 2–3, ¶ 17. Plaintiff Edward von Stange recounts that he was in handcuffs for eleven hours, including seven hours at the store and two hours at the substation, and was freed of the handcuffs twice while at the store to use the restroom. Doc. 85, ¶¶ 48, 49, 52–53.

Plaintiff Charla Stange cannot establish the subjective component of a deliberate indifference claim, that the City Defendants knew of a medical risk and disregarded it. Although the parties dispute whether Plaintiff can specifically identify Defendant Yara as the officer to whom she spoke about her oxygen needs, see Doc. 85 at 2–3, ¶ 17; at 4, ¶ 37; Doc. 89 at 2–3, ¶ 17; at 3–4, ¶ 37, it is undisputed that Defendant Yara received some sort of assurance from the MDC that oxygen would be available at the MDC. Even assuming that the City Defendants saw Plaintiff Charla Stange use or ask for oxygen, Doc. 85 at 6, ¶ 54, nothing suggests any reason to doubt that oxygen would be provided at the MDC.

Although the Plaintiffs argue that this fact fails to account for the delays at the substation and the prisoner transport center, nothing suggests that these delays were foreseeable by the Defendants.  This is not a case where the medical needs of an arrestee were disregarded and negligence is insufficient for liability on the subjective element.  Martinez v. Beggs, 563 F.3d 1082, 1089 (10th Cir. 2009).

Moreover, while Plaintiffs' amended complaint detailed the consequences of the lack of oxygen while at the MDC, Doc. 25 ¶¶ 31–34, on summary judgment, Plaintiffs cannot rely solely on the complaint to meet the objective component.  The Tenth Circuit has required that claims of delay concerning medical care result in substantial harm.  Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993).  Here, the summary judgment evidence offered by the City Defendants belies substantial harm; rather the paramedic was called because Plaintiff Charla Stange's oxygen was reportedly running out and she was attended to, though the paramedic reported that she was in no acute distress.  Doc. 78-11 at 2–3.  Accordingly, the remaining City Defendants are entitled to qualified immunity on Plaintiff Charla Stange's claim for want of a constitutional violation.

As for Plaintiff Edward von Stange's claim of excessive force based upon being handcuffed, such claims generally turn on the objective reasonableness of what occurred given the severity of the crime at issue, any immediate threat to officer or bystander safety posed by the suspect, and whether the suspect actively

-8-

resists or attempts to flee.  Fisher v. City of Las Cruces, 584 F.3d 888, 894 (10th Cir. 2009).  Here the suspected crime was buying and selling stolen goods and the suspects were detained while a search warrant was obtained and executed. Nothing suggests that the suspects posed any immediate threat to anyone, resisted, or attempted to flee.  Even accepting Plaintiffs' characterization of the alleged offense as "the possible sale of stolen DVDs by a 72 year old woman hooked up to an oxygen machine and her son at an established business that officers had visited on numerous prior occasions without incident," Doc. 85 at 10, the Tenth Circuit has observed that "in nearly every situation where an arrest is authorized, or police reasonably believe public safety requires physical restraint, handcuffing is appropriate."  Fisher, 584 F.3d at 896.

When it comes to the manner of handcuffing, the Tenth Circuit requires evidence of actual injury, be it physical or emotional; self diagnosis is insufficient.  See Cortez, 478 F.3d at 1129 n.25.  Although Plaintiffs now disclaim reliance on a "tight handcuffing" theory, Doc. 85 at 9–10, Plaintiff Edward von Stange did not complain about being handcuffed while in the store and was allowed to use the restroom twice free of such restraint.  Before leaving the substation and en route to the prisoner transport center, Defendant Stephenson adjusted the handcuffs in response to his complaint.

Plaintiffs contend that the basis of this claim is prolonged handcuffing. Though the parties argue about whether extended handcuffing is proper under

Muehler v. Mena, 544 U.S. 93 (2005), handcuffing remains the traditional method of effecting an arrest.  Fisher, 584 F.3d at 896.  In Muehler, the Court decided that no Fourth Amendment violation occurred where a detainee was held in handcuffs for two to three hours.  544 U.S at 100.  Here, an arrestee was held in handcuffs for seven hours while in the store, and another four hours while being transported and stopping at the police substation, prisoner transport center and the MDC.  Nothing suggests that the Defendants refused requests to adjust handcuffs that were too tight, or denied the suspect the opportunity to take care of necessities.  Police probably have greater leeway in making an arrest versus an investigative detention.  See Cortez, 478 F.3d at 1126 (suggesting that police may use greater force).  Plaintiffs have not suggested any case from the Supreme Court or Tenth Circuit or the weight of authority from other circuits that could have put the City Defendants on notice that the duration of the handcuffing, without any additional showing of harm, would be constitutionally impermissible.  See Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008).  Nor does the court consider this case to be one where such authority is unnecessary given the obviousness of the harm.  See Hope v. Pelzer, 536 U.S. 730, 739, 741 (2002).  The court notes that a substantial part of the handcuffing occurred while Defendants obtained and executed a search warrant.  Accordingly, the remaining City Defendants are entitled to qualified immunity on this claim for want of clearly established law.

      NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that

City Defendants' Motion for Summary Judgment Requesting Dismissal of

Plaintiffs' Amended Complaint on Qualified Immunity Grounds filed February

28, 2013 is granted.

      DATED this <u>30th</u> day of April 2013, at Santa Fe, New Mexico.

                                    *Paul Kelly Jr.*

                                  United States Circuit Judge
                                  Sitting by Designation

Counsel:

Jason J. Lewis and Kari Morrissey, Morrissey Lewis, LLC, Albuquerque, New
Mexico, for Plaintiffs.

Stephanie M. Griffin, Assistant City Attorney, and David Tourek, City Attorney,
Albuquerque, New Mexico, for Defendants Jason Sanchez, Terry Stephenson,
Nick Wilson, and Johnny Yara.